IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **AYKEE HENDERSON,** | ) | **CASE NO. 1:20 CV 1351** |
| | ) | |
| | ) | **JUDGE DONALD C. NUGENT** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **CUYAHOGA COUNTY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion of Defendant Cuyahoga County to Dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF #6) For the reasons that follow, Defendant's Motion to Dismiss is granted.

**Factual and Procedural Background**

Plaintiff, Aykee Henderson, filed this collective action on June 22, 2020, on behalf of himself and all others similarly situated, against Defendant Cuyahoga County, seeking relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*, and 29 U.S.C. § 216(b).

The Complaint makes the following factual allegations:

> 7. At all times relevant to this Complaint, Defendant employed Plaintiff and other similar situated detention officers in a non-exempt hourly capacity.

> 8. During all times relevant to this Complaint, Plaintiff and other similarly situated detention officers frequently worked in excess of 40 hours per week.

9. Defendant's detention officers are responsible for the custody and discipline of individuals detained by Defendant.

10. Among other duties, detention officers search for contraband and provide security, count, feed, and supervise detainees.

11. At the beginning of each shift, prior to clocking in, Defendant requires Plaintiff and other similarly situated detention officers to undergo a security screening.

12. During the security screening the detention officers empty their pockets, remove their shoes, belts, and jackets and all metal objects, empty their bags, and submit any personal items in their possession for inspection.

13. Defendant requires the detention officers to undergo this screening for the purposes of safety, and to prevent officers from inadvertently or intentionally bringing contraband into the prison.

14. Keeping weapons and other contraband out of the prison is necessarily tied to the detention officers' work of providing security and searching for contraband.

15. Thus, undergoing security screenings is integral and indispensable to the officers' principal activities.

16. Defendant, however, fails to compensate Plaintiff and similarly situated detention officers for time spent undergoing pre-shift security screenings.

17. Defendant's failure to compensate Plaintiff and the similarly situated detention officers resulted in unpaid overtime in violation of the FLSA. *See, Aguilar, et al. v. Management & Training Corporation*, 2020 U.S. App. LEXIS 3339 (10th Cir. Feb. 4, 2020)(pre-shift security screenings of corrections officers are integral and indispensable under *Busk* and therefore must be counted as hours worked for purposes of computing overtime).

> 18. Defendant knowingly and willfully engaged in the above-mentioned violations of he FLSA.

Complaint, (ECF #1, ¶¶ 7-18)

### Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Twombly, 550 U.S. at 555; Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000). In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a

complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001).

### Discussion

The sole claim asserted by Plaintiff is that Defendant failed to compensate Plaintiff and similarly situated detention officers for time spent undergoing pre-shift security screenings, resulting in unpaid overtime in violation of the FSLA.[1] Defendant moves to dismiss the Complaint on the ground that the Supreme Court has determined that employers are not required to compensate employees for going through a security screening prior to the start of their workday. (ECFR #6 at p.4 referring to *Integrity Staffing Solutions, Inc., v. Busk*, 574 U.S. 27 (2014).

In *Busk*, the plaintiffs were hourly warehouse workers who retrieved products from warehouse shelves and packaged them for delivery to Amazon.com customers. The

---

[1] The FSLA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek. The FSLA was amended by the Portal to Portal Act which exempted employers from liability for failure to pay an employee overtime compensation for:
 (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
 (2) activities which are preliminary or postliminary to said principal activity or activities.
See 29 U.S.C. § 254(a)(1)-(2).

plaintiffs were required to undergo security screening before leaving the warehouse each day. The district court dismissed the complaint for failure to state a claim finding that the screenings were not integral and indispensable to the employees' principal activities but were instead postliminary and noncompensable. The Ninth Circuit disagreed and reversed holding that postliminary activities are compensable as integral and indispensable to an employee's principal activities if the postshift activities are necessary to the principal work and performed for the employer's benefit. 547 U.S. at 27. The Supreme Court reversed the Ninth Circuit finding, in this case, that the time plaintiffs spent waiting to undergo and undergoing security screenings was not compensable under the FSLA. *Id.* at 29.

In reaching this holding, the Court noted that it had consistently interpreted the phrase "principal activity or activities" to "embrace all activities which are an 'integral and indispensable part of the principal activities'" and then further defined that "[a]n activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." 547 U.S. at 33. (Internal citations omitted.) The Court found that the security screenings were not the "principal activity or activities that the plaintiffs were employed to perform. Rather, the plaintiffs were hired to retrieve products from warehouse shelves and package those products for shipping. The plaintiffs were not hired to undergo security screenings. As such, "the screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment and Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work." *Id.* at 35. The

Court noted that the Ninth Circuit erred by focusing on whether the employer required a particular activity. "The integral and indispensable test is tied to the productive work that the employee is *employed to perform*." *Id.* at 36. (Emphasis in original)

In this case Plaintiff alleges that he is employed by the County as a detention officer and that detention officers are responsible for the custody and discipline of individuals detained by Defendant. Among other duties, detention officers search for contraband and provide security, count, feed, and supervise detainees. (ECF #1, ¶¶ 7, 9, 10) He alleges that at the beginning of each shift, prior to clocking in, the Defendant requires Plaintiff and other similarly situated detention officers to undergo a security screening where they empty their pockets, remove their shoes, belts, and jackets and all metal objects, empty their bags, and submit any person items in their possession for inspection. (*Id.* at ¶¶ 11-12) Plaintiff alleges that the County requires detention officers to undergo this screening for the purposes of safety, and to prevent officers from inadvertently or intentionally bringing contraband into the prison." (*Id.* at ¶ 13) Plaintiff also alleges that "keeping weapons and other contraband out of the prison is necessarily tied to the detention officers' work of providing security and searching for contraband. Thus, undergoing security screenings is integral and indispensable to the officers' principal activities." (*Id.* at ¶¶ 14-15.) Plaintiff relies on *Aquilar, et al., v. Management & Training Corp.*, 948 F.3d 1270 (10th Cir. 2020), to support his position that pre-shift security screenings of corrections officers are integral and indispensable under *Busk*. (Id. at ¶ 17)

While the Tenth Circuit in *Aquilar* was correct when it observed that "*Busk* did not hold that a security screening can never be compensable," its conclusion that the pre-shift

-6-

security screening of prison corrections officers is "tied to the productive work that [Defendant] employs the officers to perform, rendering it integral and indispensable to those duties" improperly applies *Busk*. In any event, *Aquilar* is not controlling here.

In noting that "the integral and indispensable test is tied to the productive work that the employee is employed to perform," the Supreme Court was explaining why the Court of Appeals' focus on whether an employer required a particular activity was irrelevant to the analysis. *Busk*, 574 U.S. at 36. Thus, under *Busk*, the correct analysis is whether the pre-shift screening here is an intrinsic element of the Plaintiff's principal activities and one which the employee cannot dispense if he is to perform his principal activities. *Id.* Taking Plaintiff's allegations as true, the principal activities that detention officers are employed to perform are "to be responsible for the custody and discipline of the individuals detained by Defendant" and to "search for contraband and provide security, count, feed, and supervise detainees." (ECF #1 at ¶¶ 9-10) While the pre-shift security screening may relate to part of the activity Plaintiff performs during his shifts, *i.e*, searching for contraband, the Plaintiff could still perform his job effectively if the pre-shift screenings were eliminated.

Moreover, Plaintiff has not alleged that undergoing security screenings was work of consequence he was hired to perform for the County. As Justice Sotomayor explained in her concurring opinion in *Busk*, "the Portal to Portal Act is primarily concerned with defining the beginning and end of the workday. ... It distinguishes between activities that are essentially part of the ingress and egress process, on the one hand, and activities that constitute the actual 'work of consequence performed for an employer,' on the other hand. ... The security screenings at issue here fall on the 'preliminary ... or postliminary' side of

-7-

-8-

this line. ... The searches were part of the process by which the employees egressed their place of work, akin to checking in and out and waiting in line to do so–activities that Congress clearly deemed to be preliminary or postliminary." *Id*. at 38-39 (citations omitted.)

Similarly, as in *Busk*, the security screening at issue here also falls on the "preliminary or postliminary" side of the line, merely part of the ingress process Congress deemed to be preliminary. As such, the time Plaintiff spent going through the pre-shift screenings is not compensable under FSLA.

## Conclusion

For the reasons stated above, Defendant's Motion to Dismiss (ECF #6) is granted.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: _September 24, 2020_